UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSHUA HOWARD,

                    Plaintiff,

        v.                                          Case No. 20-cv-1850-pp

ANTHONY ASHWORTH, SCOTT ECKSTEIN,
CORY SABISH, BONNIE UTECH,
EDWARD WALL, STEVEN WEIRENGA,
and DOES,

                    Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 3) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Joshua Howard, who is incarcerated at Fox Lake Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under federal law. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 3, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 3)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to let an incarcerated plaintiff proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the incarcerated person must pay an initial partial filing fee. 28 U.S.C.

1

§1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On December 16, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $41.81. Dkt. No. 5. The court twice extended the time for the plaintiff to pay the initial partial filing fee, and the court received the fee on March 16, 2021. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the fee over time in the manner explained at the end of this order.

## II.     Screening the Complaint

### A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

2

accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.      The Plaintiff's Allegations

The plaintiff alleges that he and Peg Swan, a prison reform advocate, corresponded and exchanged details about inmate abuse at Waupun Correctional Institution for Swan to use "in her campaign to sound the alarm, which consisted of near-constant letters to the DOC hierarchy, publishing info in her newsletter and giving interviews to the Wisconsin Center for Investigative Journalism (WCIJ) journalist named Bill Lueders, who was preparing to publish a series of articles on the subject." Dkt. No. 1 at ¶¶6-8. The plaintiff

3

states that on July 20, 2014, the WCIJ published the first of a series of articles about segregation abuse at Waupun. Id. at ¶13. The article allegedly identified Peg Swan as a "source and advocate for the victims." Id. The plaintiff alleges that after the first article came out, defendant Wisconsin Department of Corrections Secretary Wall ordered defendant Steven Weirenga, who was the director of the DOC's Office of Special Operations, "to implement a campaign of retaliation onto Swan and the inmates assisting her efforts." Id. at ¶14.

The plaintiff alleges that the defendants immediately started reading all incoming and outgoing mail involving Swan and implemented a ban preventing Swan from having contact with DOC prisoners. Id. at ¶15. Defendant Weirenga allegedly assigned defendant Office of Special Operations Investigator Anthony Ashworth to intercept all Swan-related mail, which allowed Ashworth to identify the plaintiff, who was confined at Waupun, and two other individuals, who were confined at Redgranite Correctional Institution, as targets of interest. Id. at ¶17. According to the plaintiff, Ashworth recruited the deputy warden of Redgranite, defendant Scott Eckstein, to assist with the Office of Special Operations investigation. Id. at ¶18. The plaintiff states that throughout 2014, Eckstein intercepted the mail between him and Swan, as well as correspondence the plaintiff had with an inmate named Jeff Poff, whom the plaintiff was considering as a representative plaintiff in a class action complaint the plaintiff was drafting about overcrowding at the institution. Id. at ¶¶5, 9, 19.

4

The plaintiff says that on August 19, 2014, his cell was searched "on behalf of the OSC [Office of Special Operations] defendants" and several letters from Swan were seized, copied and later returned. Id. at ¶20. The plaintiff alleges that in a twelve-page letter seized during the cell search, Swan explained that she had been advised that her non-profit organization, the Forum for Understanding Prisoners, could bill Jeff Poff for past services rendered and those funds could then be used to sponsor the class action lawsuit. Id. at ¶23. The plaintiff states that in an August 13, 2014 correspondence, he gave Swan the address of a company that held his power of attorney so that she could forward Poff's portion of the filing fee for the class action. Id. at ¶24.

The plaintiff states that on September 8, 2014, the Office of Special Operations defendants had him placed on TLU (Temporary Lock-Up) and seized his legal property. Id. at ¶25. He says that all his "legal property" was seized—property belonging to other inmates, copies of "case law" and briefs that the plaintiff had purchased from the library over the years, copies of every brief or motion he had drafted for others and "thousands of pages of police reports and transcripts relating to several homicides for a book the plaintiff was writing." Id. The plaintiff asserts that when he got his legal property back a week later, he realized that he'd received only transcripts or briefs that had his name in the caption; the other materials he'd collected over the years, the research materials for his book and the briefs and motions "from his co-defendant's appeals" were missing. Id. at ¶26. The plaintiff believes some of his materials

5

were given to other incarcerated persons and the rest were disposed of by the OSO defendants. Id. at ¶27.

The plaintiff alleges that after spending several weeks on TLU status, Ashworth issued him a conduct report. Id. at ¶28. The plaintiff alleges that a large portion of the conduct report maintained that he had engaged in "enterprising" based on Jeff Poff's efforts to send the plaintiff funds from his release account through the Forum for Understanding Prisoners and it included an excerpt from the plaintiff's August 13 correspondence to Swan. Id. at ¶29. The plaintiff's disciplinary hearing advocate allegedly told him that he would be able to review evidence supporting the charge at the hearing and that she would bring Swan's twelve-page letter to the due process hearing. Id. at ¶30.

The due process hearing allegedly took place five days after the plaintiff received the conduct report. Id. at ¶31. The plaintiff says the only evidence submitted in support of the charges was a letter Jeff Poff had sent to Peg Swan that contained Poff's communication with his social worker. Id. The plaintiff states that he submitted a written statement, the instruction page for a 42 U.S.C. §1983 complaint form showing that the filing fee was $400 and Swan's twelve-page letter in defense of the charges. Id. at ¶32.

The plaintiff alleges that defendant Cory Sabish found him guilty of Enterprising and Fraud and sentenced him to 120 days' disciplinary segregation. Id. at ¶33. The plaintiff says that in the "reasons for his decision," Sabish stated that based on the conduct report and "Misc paper work," he

6

found that the plaintiff "attempted to have another inmate send money to a third party to have them then in return send money to Howard for legal services." Id.

The plaintiff alleges that in his appeal of his conduct report, he complained that the general allegations in the conduct report, lack of supporting evidence and guilty finding resulted in a "vagueness issue" because the conduct report technically included three separate allegations that could support an Enterprising charge, but the only evidence presented at the hearing related to the Jeff Poff allegation. Id. at ¶37. The plaintiff states that the warden affirmed Sabish's findings, but the Secretary returned the record to Sabish to supplement Sabish's reasons for decision with a list of the evidence relied on to support the guilty finding. Id. at ¶38. The plaintiff alleges that on July 27, 2015, Sabish filed a revised "DOC-84" that referenced several documents not submitted at the due process hearing, including "3 pages of a phone interview, 39 copies of money/receipts, 1 prisoner assistant form, 6 pages of contract documents." Id. at ¶39.

The plaintiff alleges that he appealed the revised decision, complaining that it described evidence that never was presented at the due process hearing. Id. at ¶40. He states that the Office of Special Operations defendants "belatedly supplied Sabish with supporting evidence so that he could back-fill the record so that it might withstand a certiorari challenge to the sufficiency of the evidence." Id.

The plaintiff alleges that he filed an open records request with defendant Wall under Wis. Stat. §19.35, seeking "a copy of all records, documents, statements and notes that were generated by Ashworth and Eckstein's investigations into [his] conduct which resulted in CR 2471890." Id. at ¶41. Defendant Utech allegedly granted the release of all requested documents and initially said there were 200 pages responsive to the request, but Utech sent a revised form stating there were forty-six available pages. Id. at ¶42. The plaintiff states that in another lawsuit, the Assistant Attorney General disclosed several pages of investigative materials that defendants Wall and Utech did not disclose in response to the open records request and that were not part of the *certiorari* record. Id. at ¶46.

The plaintiff alleges that he filed for *certiorari* relief in Dane County and that the record the DOC supplied did not include Swan's twelve-page letter the plaintiff had submitted as evidence. Id. at ¶43. He says the letter has not been located. Id. at ¶44. The plaintiff believes that Sabish "intentionally disposed of this evidence as it was the plaintiff's strongest evidence in defense of the Poff allegation and it allowed him to comfortably find the plaintiff guilty of enterprising as none of the evidence described in the conduct report was available at the hearing." Id. The plaintiff states that when Sabish drafted his revised DOC-84 with the newly obtained evidence, he expanded the basis for the guilty finding from a description of the Poff allegation to include a separate business venture and other details from the conduct report that the documents supported. Id. at ¶45.

The plaintiff alleges that in the state *certiorari* proceedings, he filed

motions to strike the amended record containing the documents Sabish

belatedly added to the record on appeal of his conduct report. Id. at ¶47. The

trial court allegedly gave this issue only a "cursory review." Id. The plaintiff

states that he lacked physical evidence and had to rely on his affidavit

regarding the due process hearing. Id. He says that one of the newly discovered

documents was a "DOC-1266 Contraband Property Tag" used to document the

chain of custody of conduct report evidence. Id. The plaintiff states that the

space on the form designated for the hearing officer's signature is blank and

the bottom portion of the form, which provides five evidence-used-related boxes

for the hearing officer to check, also is blank. Id. at ¶¶47, 49. The plaintiff

alleges that if this form had been disclosed in the open records request or

included in the *certiorari* record, "the anomaly of an unsigned custody form

that was not filled out at the hearing would have strengthened the plaintiff's

argument that this evidence was not present at the hearing and was only

added to the record on appeal." Id. at ¶50.

The plaintiff says the conduct report contained general allegations

regarding the plaintiff having legal work belonging to thirty inmates and money

deposited into the plaintiff's account from inmates' family members. Id. at ¶51.

He states that discovery from a lawsuit included detailed information about the

deposits, inmates and family members, and he maintains that this exculpatory

evidence would have enabled the plaintiff to respond and present a defense to

the charges, but they were not presented at his due process hearing or

disclosed in the open records request or the *certiorari* proceedings. Id.

According to the plaintiff, a majority of the thirty inmates whose property he

had were at Waupun and the defendants interviewed each of them about

whether they had paid the plaintiff for his assistance. Id. at ¶52. Each inmate

the defendants questioned allegedly denied compensating the plaintiff for his

assistance. Id. The plaintiff alleges that these exculpatory interviews never were

disclosed to him. Id.

   C.    The Court of Appeals Decision

Because it is helpful in understanding the plaintiff's allegations and

claims, the court takes judicial notice of the plaintiff's appeal of the state

circuit court order affirming the disciplinary decision on the plaintiff's conduct

report. See State of Wis. *ex rel.* Joshua Howard v. Scott Neitzel, Case No.

2017AP642 (Nov. 14, 2018). In affirming the circuit court's decision, the

Wisconsin Court of Appeals stated in part:

> This case arises out of Department of Corrections (DOC) conduct report alleging that Howard, while an inmate, was running a lawyering enterprise and using a third-party account to conceal payments for legal work performed on behalf of other inmates. A search of Howard's property by DOC staff revealed that Howard was in possession of legal materials belonging or relating to 30 other inmates. After a disciplinary hearing held on October 20, 2014, Howard was found guilty of enterprises and fraud, contrary to Wis. Admin. Code § DOC 303.36 (through September 2014), and not guilty of three other offenses. The hearing officer documented the decision on a form DOC-84.
>
> Howard appealed the decision through DOC administrative channels and, as a result, the decision was affirmed, but form DOC-84 was revised to include references to the specific evidence the hearing officer evaluated and reviewed, and to explain in greater detail the officer's reasoning for the decision. Howard again sought administrative appeal of the decision, and the revised decision was

affirmed by the warden. Howard then sought certiorari review in the circuit court. The circuit court determined that there was substantial evidence in the record to support a finding that Howard engaged in enterprising and fraud, and affirmed DOC's decision. Howard now appeals.

No. 2017AP642, slip op. at 2 (internal footnotes omitted). In addressing the plaintiff's due process argument, the court of appeals stated:

All three due process requirements were satisfied in this case. The record reflects that Howard was given a copy of the conduct report that detailed his alleged violations, satisfying the first requirement. As to the second requirement, the hearing officer rendered a written decision on a form DOC-84 and then, at the recommendation of a Corrections Complaint Examiner, revised the form to list the specific evidence relied upon and explain in greater detail the reasoning for the decision. The record also reflects that Howard presented a written statement and witness testimony at the disciplinary hearing, thus satisfying the third due process requirement.

Howard complains that DOC failed to include in the administrative record a twelve-page letter that he received from an individual named Peg Swan. The conduct report alleged that another inmate, Jeff Poff, had attempted to pay Swan $200 for "legal services." Howard asserts that Swan's letter was important to his defense because it would have shown that the $200 he solicited was not for purposes of engaging in business or enterprise, but to pay half of the filing fee for a federal lawsuit in which Howard and Poff were plaintiffs. Howard concedes that he was given the opportunity to review Swan's letter at the hearing. In addition, the written statement Howard submitted at the hearing includes a summary of Swan's letter. However, Howard is correct that the letter itself is not included in the record.

Even if we assume, without deciding the issue, that Swan's letter was improperly omitted from the record, we agree with the respondents' position that the error would have been harmless. An inmate is guilty of enterprises and fraud if the inmate "engages in a business or enterprise, whether or not for profit" or "sells anything except as specifically allowed under other sections." Wis. Admin. Code § DOC 303.36. The hearing officer explained in the revised DOC-84 form that Howard was found guilty of enterprises and fraud because Howard "had other inmate[s] send money via a third part[y] to have them then in return send the money to Howard for legal services" and because the evidence showed that Howard was sent a

11

large number of receipts addressed to him at the "Howard Institute." The Swan letter is not listed among the evidentiary materials the hearing officer relied upon, and neither the original nor the revised DOC-84 form makes any reference to Jeff Poff or the $200 solicited for Peg Swan. In short, Howard has failed to show that inclusion of Swan's letter in the record would have made any difference to his defense or to the outcome of the disciplinary proceedings. Any error, therefore, was harmless. *See* Wis. Admin. Code § DOC 303.88 (through August 2018) ("If staff does not adhere to a procedural requirement under this chapter, the error is harmless if it does not substantially affect a finding of guilt or the inmate's ability to provide a defense.").

Finally, Howard asserts that, when the hearing officer was directed by the Corrections Complaint Examiner to issue a revised decision, the officer relied upon "new" documents that were not presented at the original disciplinary hearing, in violation of his due process rights. The revised DOC-84 form lists the physical evidence relied upon as: "3 pages of a phone Interview, 39 copies of money/receipts, 1 prisoner assistant form, 6 papers of [] contract documents." The respondents argue that these documents were not actually new evidence, but rather were the same documents that were listed on the original DOC-84 form as "Misc[.] paper work." There is nothing in the record to support Howard's assertion that the documents at issue were not reviewed by the committee as part of its initial finding of guilty. Moreover, an opportunity to inspect physical evidence is not among the due process requirements for prison disciplinary hearings. *See Jackson*, 330 Wis. 2d 279, ¶50 (stating the three hallmarks of due process that must be satisfied in prison disciplinary actions).

No. 2017AP642, slip op. at 3-5.

D.     The Plaintiff's Claims

The plaintiff makes several claims for relief. First, he claims that defendants Wall and Weirenga displayed deliberate indifference by creating and/or using the Office of Special Operations as an enforcement arm and a device to quell whistleblowers through intimidation and rampant abuse of constitutional rights, which foreseeably led to the violations of the plaintiff's constitutional rights. Id. at ¶53.

12

Next, the plaintiff clams that defendants Ashworth, Eckstein and Sabish retaliated against the plaintiff for his proposed class action against Waupun and for providing assistance and information to Peg Swan regarding the abuse of Waupun inmates. Id. at ¶58. The plaintiff claims that these defendants retaliated against him as follows: (1) Ashworth and Eckstein violated the plaintiff's substantive due process right to exculpatory evidence when, during their investigation, they destroyed evidence favorable to the plaintiff or evidence which would have provided details that would have allowed him to present a defense to the conduct report charges, *e.g.*, the interview notes of Waupun inmates, exculpatory letters from and to the plaintiff, financial records from Prisoner Assistant and notes of the phone interview conducted with the plaintiff's friend; (2) Sabish violated the plaintiff's substantive due process rights when he disposed of the twelve-page exculpatory letter that the plaintiff submitted as evidence at his due process hearing, ensuring that it would not be made a part of the record on appeal; (3) Sabish violated the plaintiff's substantive due process rights when he received evidence several weeks after the hearing, issued a revised finding of guilt based on this evidence and included the evidence in the record on appeal; (4) Ashworth and Eckstein violated the plaintiff's substantive due process rights when they provided evidence to Sabish "post- due process hearing so that he could supplement the record and his findings, ex parte;" and (5) Sabish and Does violated the plaintiff's substantive due process rights when they provided a supplemental

13

*certiorari* record which was "added to the record on appeal, *ex parte*, and which omitted several exculpatory documents." Id. at ¶¶54-57, 60.

Finally, the plaintiff claims that defendants Wall, Utech and Does violated his rights under the First Amendment and Wis. Stat. §19.35(1) by approving his open records request in full, then withholding several documents. Id. at ¶59.

The plaintiff seeks declaratory relief and nominal, compensatory and punitive damages. Id. at 15.

E.      Analysis

The plaintiff's first claim against former DOC secretary Wall and former director of the Office of Special Operations Weirenga—which he characterizes as a deliberate indifference claim—is a retaliation claim. In the body of the complaint, the plaintiff asserts that Wall ordered Weirenga "to implement a campaign of retaliation onto Swan and the inmates assisting her efforts." Dkt. No. 1 at ¶14. Several of the plaintiff's multiple "substantive" due process claims also are retaliation claims.

To plead a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)). The plaintiff's allegations, liberally construed, state claims of retaliation against

14

Weirenga, Wall, Ashworth and Eckstein. Specifically, he alleges that after the July 2014 WCIJ article came out, Ashworth and Eckstein, at the direction of Wall and Weirenga, intercepted the plaintiff's correspondence with Peg Swan and Jeff Poff in retaliation for, respectively, the plaintiff's assistance to Swan with her advocacy for Waupun prisoners and the class action lawsuit the plaintiff and Poff were preparing. Assuming they accrued in July 2014, the statute of limitations may bar these claims, because the plaintiff did not file this case until December 2020. Section 1983 claims are subject to Wisconsin's six-year personal rights statute of limitations, Wis. Stat. §893.53[1]. Wudtke v. Davel, 128 F.3d 1057, 1061 (7th Cir. 1997); Gray v. Lacke, 885 F.2d 399, 409 (7th Cir. 1989). But because the statute of limitation is an affirmative defense, the court will allow the claims to proceed at this stage.

The plaintiff also states retaliation claims against Ashworth, Eckstein and Sabish based on allegations that they retaliated against him for his proposed class action against Waupun and for providing assistance and information to Peg Swan regarding the abuse of Waupun inmates. Specifically, the plaintiff may proceed on claims that: (1) Ashworth and Eckstein destroyed evidence, as alleged in ¶54; (2) Sabish disposed of the twelve-page exculpatory letter the plaintiff submitted as evidence at his hearing, as alleged in ¶55; (3) Sabish issued a revised finding of guilt based on evidence he received after the

---

[1] Wisconsin's personal injury statute of limitation was amended effective April 5, 2018, from six years to three years. Wis. Stat. §893.53. The three-year statute of limitations applies to causes of action accruing on or after April 5, 2018. Huber v. Anderson, 909 F.3d 201, 207 (7th Cir. 2018) (citing 2017 Wis. Act 235 (eff. Apr. 5, 2018)).

hearing, as alleged in ¶56; (4) Ashworth and Eckstein provided evidence to

Sabish "post-due process hearing so that he could supplement the record and

his findings, ex parte," as alleged in ¶57; and (5) Sabish provided a

supplemental *certiorari* record which was "added to the record on appeal, ex

parte," and which omitted several exculpatory documents, as alleged in ¶60.[2]

The plaintiff repeatedly asserts that the defendants violated his

*substantive* due process rights. "'Substantive due process' is a substantive

limitation on the power of government to legislate, preventing legislatures from

trampling on fundamental rights found elsewhere in the constitution." Durigan

v. Sanitary Dist. No. 4—Town of Brookfield, 5 Fed. App'x 492, 494 (7th Cir.

2001) (citing Gosnell v. City of Troy, 59 F.3d 654, 657 (7th Cir. 1994);

Schroeder v. City of Chi., 927 F.2d 957, 961 (7th Cir. 1991); Coniston Corp. v.

Vill. of Hoffman Estates, 844 F.2d 461, 465 (7th Cir. 1988)). "'[T]he scope of

substantive due process is very limited.'" Campos v. Cook Cty., 932 F.3d 972,

975 (7th Cir. 2019) (quoting Tun v. Whitticker, 398 F.3d 899, 902 (7th Cir.

2005)).

> And courts should be "reluctant to expand the concept of
> substantive due process because guideposts for responsible
> decisionmaking in this unchartered area are scarce and open-
> ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 . . .
> (1992). Given its slippery nature, the requirements for stating a
> substantive due process claim are similarly vague. A plaintiff must
> allege that the government violated a fundamental right or liberty.
> [*Washington v.*] *Glucksberg*, 521 U.S. [702] at 720 [(1997)] . . . ;
> *Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007). And that
> violation must have been arbitrary and irrational. *Cty. of Sacramento*

---

[2] In this claim, the plaintiff references Doe defendants. Dkt. No. 1 at ¶60.
However, the complaint contains no allegations against a Doe defendant related
to this claim. The plaintiff may proceed only against Sabish on this claim.

*v. Lewis*, 523 U.S. 833, 845 . . . (1998); *Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir. 2009). Substantive due process protects against only the most egregious and outrageous government action. *See Lewis*, 523 U.S. at 845 . . . ; *Belcher*, 497 F.3d at 753 (7th Cir. 2007).

Id.

The Seventh Circuit has held that "even assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due process." Lagerstrom v. Kingston, 463 F.3d 621, 625 (7th Cir. 2006) (quoting McPherson v. McBride, 188 F.3d 784, 787 (7th Cir. 1999)). In other words, a claim that prison officials falsified information or documents in relation to conduct reports implicates *procedural* due process, not *substantive* due process.[3] The Seventh Circuit has gone so far as to find "that an allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections as required in *Wolff v. McDonnell*[, 418 U.S. 539 (1974)] are provided." Hanrahan v. Lane, 747 F.2d 1137, 1141 (7th Cir. 1984). Only where "a prison official's conduct might be so extreme that 'no subsequent procedural fairness could obscure or heal it'" can a plaintiff state a claim under the principles of substantive due process. Lagerstrom, 463 F.3d at 625. A prison official's fabrication of a conduct report "can amount to a violation of substantive due process if the

---

[3] As best the court can tell, the plaintiff is not trying to bring *substantive* due process claims in this lawsuit. He has not alleged a deprivation of a liberty interest and the Wisconsin appellate decision describes an abundance of procedural protections afforded him.

charges were in retaliation for the exercise of a constitutional right." <u>Black v. Lane</u>, 22 F.3d 1395, 1402-03 (7th Cir. 1994). The plaintiff has not alleged that the defendants fabricated the conduct report allegations; he has not alleged a plausible substantive due process claim.

Finally, the plaintiff may not proceed on his claim under the Wisconsin Open Records Law, Wis. Stat. §19.35. There is no federal review of Wisconsin open records request determinations. Open records determinations are subject to review by mandamus under Wis. Stat. §19.37(1) or upon application to the attorney general or a district attorney. Wis. Stat. §19.35(4)(b).

The plaintiff may proceed on retaliation claims against Wall, Weirenga, Ashworth, Eckstein and Sabish, as described above. The court will dismiss defendants Bonnie Utech and Does because the plaintiff has not stated plausible claims against them.

### III.    Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The court **DISMISSES** defendants Bonnie Utech and Does.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Anthony Ashworth, Scott Eckstein, Edward Wall, Steven Weirenga and Cory Sabish. The court **ORDERS** those defendants to file a responsive pleading to the complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$308.19** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Warden at Fox Lake Correctional Institution.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[4] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[4] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

THE PLAINTIFF MUST NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S

CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take

other required actions by the deadlines the court sets, the court may dismiss

the case based on his failure to diligently pursue it. The parties must notify the

clerk of court of any change of address. The court advises the plaintiff that it is

his responsibility to promptly notify the court if he is released from custody or

transferred to a different institution. The plaintiff's failure to keep the court

advised of his address may result in the court dismissing this case without

further notice.

Dated in Milwaukee, Wisconsin, this 2nd day of June, 2022.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**

20