UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSHUA HOWARD,

                Plaintiff,

v.                                  Case No. 20-cv-1850-pp

ANTHONY ASHWORTH, SCOTT ECKSTEIN,
CORY SABISH, EDWARD WALL
and STEVEN WEIRENGA,

                Defendants.

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION GROUNDS (DKT. NO. 26) AND SETTING DEADLINES FOR COMPLETING DISCOVERY AND FILING DISPOSITIVE MOTIONS**

      Joshua Howard, who is incarcerated at Fox Lake Correctional Institution, filed this case alleging that the defendants violated his constitutional rights when he was incarcerated at Waupun Correctional Institution. Dkt. No. 1. The court screened the complaint and allowed the plaintiff to proceed on claims that Anthony Ashworth and Scott Eckstein—at the direction of Edward Wall and Steven Weirenga—allegedly intercepted the plaintiff's correspondence with Peg Swan and Jeff Poff in retaliation for, respectively, the plaintiff's assistance to Swan with her advocacy for individuals incarcerated at Waupun and the class action lawsuit the plaintiff and Poff were preparing. Dkt. No. 9 at 15. The court also allowed the plaintiff to proceed on claims that Ashworth, Eckstein and Cory Sabish retaliated against the plaintiff for his proposed class action against Waupun and for providing assistance and information to Peg Swan regarding the abuse of individuals incarcerated at Waupun. Id. Specifically, the

1

court allowed the plaintiff to proceed on claims that: (1) Ashworth and Eckstein destroyed evidence, as alleged in ¶54 of the complaint; (2) Sabish disposed of the twelve-page exculpatory letter the plaintiff submitted as evidence at his hearing, as alleged in ¶55 of the complaint; (3) Sabish issued a revised finding of guilt based on evidence he received after the hearing, as alleged in ¶56 of the complaint; (4) Ashworth and Eckstein provided evidence to Sabish "post-due process hearing so that he could supplement the record and his findings, *ex parte*," as alleged in ¶57 of the complaint; and (5) Sabish provided a supplemental *certiorari* record which was "added to the record on appeal, *ex parte*," and which omitted several exculpatory documents, as alleged in ¶60 of the complaint. Id. at 14-16. The defendants have filed a motion for summary judgment in which they contend that the plaintiff failed to exhaust his administrative remedies. Dkt. No. 26.

## I.  Facts[1]

This case involves the investigation of the plaintiff by the Wisconsin Department of Corrections ("DOC") Office of Special Operations ("OSO") in 2014, the issuance of conduct report ("CR") 2471890 on October 10, 2014 and the subsequent appeal that occurred from 2014 to 2016. Dkt. No. 38 at ¶1. Throughout 2014 and 2015, the defendants monitored the plaintiff's incoming and outgoing mail. Id. at ¶2. Internal institutional mail would be directed to a

---

[1] The court includes only material, properly supported facts in this section. See Fed. R. Civ. P. 56(c). The defendants filed no reply to the plaintiff's proposed findings of fact ¶¶29-51, so the court deems those facts undisputed. See Civil L.R. 56(b)(4) (E.D. Wis.).

security captain at Waupun and external mail would be forwarded to Eckstein. Id. The screening process caused the plaintiff's mail to be delayed. Id.

The plaintiff filed several Inmate Complaint Review System ("ICRS") complaints which are relevant to his retaliation claims: (1) WCI-2014-19267; (2) WCI-2014-20206; (3) WCI-2014-20207; (4) WCI-2014-21208; (5) WCI-2014-21501; (6) WCI-2015-15129; and (7) GBCI-2019-8021. Dkt. No. 27-1 at ¶1; Dkt. No. 39 at ¶1.[2]

    A.    <u>Complaints Related to Plaintiff's Claim that Ashworth, Eckstein, Wall and Weirenga Intercepted Plaintiff's Correspondence with Peg Swan and Jeff Poff in Retaliation for the Plaintiff's Assistance to Swan with her Advocacy for Waupun Incarcerated Individuals and the Class Action Lawsuit the Plaintiff and Poff were Preparing</u>

The defendants have not argued that the plaintiff failed to exhaust his administrative remedies related to this claim.

    B.    <u>Complaints Related to Plaintiff's Allegations that his Property was Missing or Disbursed</u>

These complaints appear to relate to the plaintiff's claim that during their investigation Ashworth and Eckstein destroyed evidence favorable to the plaintiff that would have provided details to allow the plaintiff to present a defense to the charges in the conduct report. Dkt. No. 1 at ¶¶25-27, 54; Dkt. No. 9 at 9-10, 15.

---

[2] The defendants' proposed findings of fact include several other ICRS complaints that they said were relevant to the plaintiff's retaliation claims. Dkt. No. 27-1 at ¶1. In his response brief, the plaintiff contends that he has exhausted remedies based on the ICRS complaints included in the above list. Dkt. No. 37. The court has not included in this section the ICRS complaints that the defendants said were arguably relevant, but that the plaintiff did not include in his response.

3

1. *Complaint WCI-2014-19267*

On September 8, 2014, the plaintiff was taken to segregation and placed on "TLU" (temporary lock-up) for an investigation into the violation of DOC 303.32, Enterprising and Fraud. Dkt. No. 38 at ¶17. He filed three ICRS complaints after receiving his legal property in segregation. Id. at ¶18.

The Institute Complaint Examiner ("ICE") Office received WCI-2014-19267 on September 30, 2014. Dkt. No. 27-1 at ¶21. In that complaint, the plaintiff states:

> LEGAL MATERIALS WERE RETURNED TO STOP LAWSUIT[.] In my property I had an expandable folder containing drafts for a class action lawsuit and folders for each inmate-plaintiff filled with the documents supporting their injury. All of these folders were taken [sic] out of my property and either destroyed or returned to the inmates in an attempt to derail the lawsuit so I can't move forward. In addition returning their legal work was an intimidation tactic. (Ex. 1004, at 7.)

Id. at ¶23. The ICE rejected WCI-2014-19267 as moot because the issue it raised "ha[d] been addressed through the inmate's prior use of the ICRS in his complaint WCI-2014-20207." Id. at ¶24. The plaintiff appealed, and the reviewing authority found that the ICE appropriately had rejected WCI-2014-20207. Id. at ¶25. The full text of the plaintiff's appeal is as follows: "This is not the same issue as 20207." Id. at ¶26.

2. *Complaint WCI-2014-20206*

The second "property-related" complaint the plaintiff filed after receiving his property in segregation was WCI-2014-20206. Dkt No. 38 at ¶22. The ICE acknowledged receipt of that complaint on October 14, 2014. Dkt. No. 27-1 at ¶40. In WCI-2014-20206, the plaintiff stated:

4

> Missing Legal Materials. I am missing a day's worth of trial transcripts and several pads of paper, caselaw, and copies of briefs that were in my property. (Ex. 1007, at 10.)

Id. at ¶42.

The ICE recommended that WCI-2014-20206 be dismissed on several grounds, including that the plaintiff had been directed to contact a particular sergeant to attempt to resolve his issue but had failed to do so. Id. at ¶43. The plaintiff appealed the dismissal of WCI-2014-20206. Dkt. No. 38 at ¶24.

### 3. *Complaint WCI-2014-20207*

The ICE received WCI-2014-20207, the plaintiff's third property-related complaint, on October 14, 2014. Dkt. No. 38 at ¶18; Dkt. No. 27-1 at ¶45. In that complaint, the plaintiff said:

> Legal Property Was Returned to Inmates. I was helping several inmates with legal matters and while investigating staff separated the property and asked each person if they were paying me. When they were done staff returned the materials to their owners even though they wanted it returned to me so I could continue working. A lot of the legal work was legal routed and now they have no way of getting it to me. (Ex. 1008, at 8.)

Id. at ¶47.

The ICE rejected WCI-2014-20207 as moot because "items seized that are used as evidence for a conduct report and deemed contraband are disposed of at the discretion of the Hearing Officer." Dkt. No. 38 at ¶20. The plaintiff appealed, stating: "I was not found guilty of violating the rules in relation to the inmates' property I had. The inmate should not have to pay for postage a second time." Id. at ¶49. The reviewing authority found that the ICE properly rejected WCI-2014-20207. Id. at ¶50. Nowhere in WCI-2014-20207 did the

5

plaintiff allege or otherwise mention that the legal materials he said were missing had been taken as retaliation. Id. at ¶51.

> C. <u>ICRS Complaints Related to Claims that Ashworth, Eckstein and Sabish Retaliated Against the Plaintiff Related to Conduct Report 2471890 for his Proposed Class Action and for Providing Assistance to Peg Swan</u>
>
> 1. *Complaint WCI-2014-21208*

The ICE acknowledged WCI-2014-21208 on October 28, 2014. Id. at ¶52. In that complaint, the plaintiff complained that Conduct Report 2471890 "was written in retaliation" for "communicating with a prison advocate/media." Dkt. No. 27-1 at ¶53. The full text of the plaintiff's grievance states:

> My ticket was written by Ashworth and Eckstein who also investigated (2) inmates at RGCI because of our correspondence with Peg Swan. This is supported by the fact that even though the allegation in my CR have [sic] nothing to do with the other inmates all of the conduct reports charged us with the same (4) rule violations. Communicating with a prison advocate/media cannot be punished. (Ex. 1009, at 8.)

Id. at ¶54. The ICE rejected the complaint as outside of the scope of the ICRS, stating as follows:

> From DOC. 310.08(2), "An inmate may not use the ICRS to raise .... Any [sic] issue related to a conduct report unless the inmate has exhausted the disciplinary process in accordance with ch. DOC 303." The issue raised is clearly related to conduct report 2471890. The matter has not been resolved through the disciplinary process, meaning, the appeal process to the Warden is not complete. Consequently, this complaint falls from the scope of the ICRS and is rejected on that basis.
>
> Inmate Howard is reminded that the ICRS may be used to challenge only the disciplinary process, following DOC 310.08(3). In accordance with DOC 310.11(3), the investigation of a complaint filed under DOC 310.08(3) is limited to a review of the record.

Dkt. No. 38 at ¶29.

6

The plaintiff filed an appeal of the rejection, asserting that his complaint did not involve the facts or issues related to his conduct report but, rather, the motivation behind the investigation and conduct report. Id. at ¶30. The reviewing authority affirmed the ICE's finding that the issue raised in the complaint was outside the scope of the ICRS. Id.

2. *Complaint WCI-2014-21501*

The first step in a disciplinary appeal requires that the prisoner submit an appeal to the warden within ten days of receiving a copy of the "DOC-84" (Disciplinary Hearing Reasons for Decision and Evidence Relied On). Dkt. No. 38 at ¶36. The plaintiff received the DOC-84 for CR 2471890 on October 27, 2014, and he filed the "DOC-91" (Appeal of Adjustment Committee or Hearing Officer's Decision) to the warden later that same day. Id. The crux of the plaintiff's appeal was that the failure to provide supporting evidence was fatal to the enterprising charges because it left only the vague allegations in the conduct report. Id. at ¶37.

The warden denied the appeal on October 30, 2014, and the plaintiff filed ICRS complaint WCI-2014-21501 raising the same issues. Id. at ¶38. In his report, the ICE emphasized the limited scope of appeals involving a conduct report, noting that the ICRS may be used to challenge only the procedure used in the disciplinary process, as stated in DOC 310.08(3). Id. at ¶39. The ICE also stated,

> Claims that are merely a statement of subjective belief related to the disciplinary action, challenges to the validity of the information in the text of the conduct report, challenges to the acts of discretion afforded to the Warden, Security Director or Hearing

7

> Officer, and pleadings that attempt to invoke an examination of factors outside of the established hearing record cannot be addressed.

Id. The ICE agreed that there was an inconsistency related to the subsection of DOC 303.32 cited by the hearing officer and recommended that WCI-2014-21501 be dismissed with the modification that the record be returned to the hearing officer for completion or correction of the DOC-84. Id. The reviewing authority accepted the recommendation. Id.

The plaintiff filed an appeal and the corrections complaint examiner found that the DOC-84 was incomplete and should be returned for clarification. Id. at ¶¶40, 41. The secretary affirmed the recommendation, and the record was returned to the hearing officer to correct the DOC-84. Id.

### 3. *Complaint WCI-2015-15129*

On July 27, 2015, Sabish submitted a revised decision CR 2471890 which referenced several documents that were not submitted at the due process hearing. Id. at ¶42. In response to the reference to evidence which was not a part of the record, the plaintiff filed a DOC-91 appeal to the warden on July 31, 2015. Id. at ¶43. The warden denied the appeal on August 6, 2015. Id.

The plaintiff filed ICRS complaint WCI-2015-15129 on August 13, 2015, complaining that the hearing officer had added evidence to the record post-hearing and citing the date of incident as the warden's August 6, 2015 decision. Id. at ¶44. Under the ICE's directives from WCI-2014-21501, the plaintiff omitted the retaliatory motive for backfilling the record as it was outside the scope of the ICRS. Id. When the plaintiff did not receive a decision

8

from the ICE within twenty working days, he filed an appeal. Id. at ¶45. On November 5, 2015—a few days after the plaintiff filed his appeal—the ICE rejected the complaint as untimely based on the July 30, 2015 date the plaintiff received his copy of the revised DOC-84 and the fact that the complaint was not date-stamped by the ICE until August 17, 2015. Id. at ¶46.

As stated in the ICE Report for complaint WCI-2014-21208, before appealing a disciplinary decision by filing a complaint, an incarcerated individual first must appeal the decision to the warden. Id. at ¶47. The plaintiff appealed and stated that the rejection of complaint WCI-2015-15129 was erroneous because the ICE no longer had jurisdiction and the plaintiff was required to file an appeal to the warden before filing an ICRS complaint. Id. He also stated that, even if that were not the case, his complaint was dated and placed in the complaint box on August 13, which was still inside the "mistaken" fourteen-day window after the plaintiff received the revised DOC-84. Id. at ¶48.

### 4. *Complaint GBCI-2019-8021*

The plaintiff's history of receiving conduct reports alleging enterprising was an issue in an unrelated lawsuit and the plaintiff requested the record for each conduct report including 2471890. Id. at ¶48.[3] Within that discovery were several documents favorable to the plaintiff that he says would have assisted his defense against the charges and helped him prove that evidence was added to the record on appeal. Id. Accordingly, the plaintiff filed complaint GBCI-

---

[3] The plaintiff repeats ¶48 on pages 15 and 16 of his proposed findings of fact.

9

2019-8021 complaining that the defendants had withheld exculpatory evidence from his due process hearing, his open record request and his *certiorari* appeal. Id. at ¶49. The ICE rejected the complaint, stating that the issue had been addressed through the plaintiff's prior use of the ICRS. Id. at ¶50. The plaintiff states that the rejection was erroneous because he was raising a different issue based on new information. Id. The plaintiff filed an appeal which was denied by the reviewing authority. Id. at ¶51. This complaint was fully exhausted within the ICRS. Id.

**II. Analysis**

    A.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of

10

the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B.     Discussion

The defendants contend that the plaintiff did not exhaust his administrative remedies because the ICE properly rejected the plaintiff's ICRS complaints in which he attempted to grieve retaliation. Dkt. No. 27 at 10. According to the defendants, of the plaintiff's ICRS complaints that are potentially relevant to the claims at issue, only four mention retaliation or assert factual allegations that might be read to allege retaliation: (1) WCI-2014-18518; (2) WCI-2014-18519; (3) WCI-2014-19267; and (4) WCI-2014-19587. Id. The defendants state that these complaints were properly rejected. Id. at 10-13.

The plaintiff responds that the defendants failed to meet their burden of establishing that he failed to exhaust. Dkt. No. 37 at 3-4. He contends that he properly filed and fully exhausted his complaints about the "missing/disbursed property" with ICRS complaints WCI-2014-20207 (disbursed materials), WCI-2014-20206 (missing materials) and WCI-2014-19267 (retaliation). Id. at 5.

The plaintiff also contends that he exhausted his available administrative remedies related to CR 2471890 and the disciplinary hearing. According to the

11

plaintiff, the ICE improperly found that complaint WCI-2014-21208 (retaliatory conduct report 2471890) was "related to" the conduct report and outside the scope of the ICRS. Id. at 8-9. The plaintiff also contends that the ICE improperly rejected WCI-2015-15129 and WCI-2019-8021. Id. at 13-15.

### C. The Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) says that an incarcerated individual cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that an incarcerated person comply with the rules applicable to the grievance process at his institution. Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The objective of §1997e(a) is to permit the institution's "administrative process to run its course before litigation begins." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (quoting Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005)); see also Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit applies a "strict compliance approach to exhaustion" and expects incarcerated individuals to adhere to "the specific procedures and deadlines" established by the institution's policy. Dole, 438 F.3d at 809; see also Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted).

Because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. Pavey v. Conley, 544 F.3d 739, 740-41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

The DOC's Inmate Complaint Review System provides the administrative process for incarcerated individuals with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code §DOC 310.01(2)(a).[4] Before an incarcerated individual can file a lawsuit, he must exhaust all administrative remedies that the DOC has promulgated by rule. Wis. Admin. Code §DOC 310.05. Incarcerated individuals should use the ICRS to "raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints[.]" Wis. Admin. Code §DOC 310.08(1).

To use the ICRS, an incarcerated individual must file a complaint with the ICE within fourteen days after the occurrence that gives rise to the complaint. Wis. Admin. Code §§DOC 310.07(1), 310.09(6). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority." Wis. Admin. Code §§DOC 310.11(2), 310.11(11). The appropriate reviewing authority makes a decision within ten days following receipt of the recommendation. Wis. Admin. Code §DOC 310.12(1). Within ten days after the date of the decision, a complainant dissatisfied with a reviewing authority's decision may appeal that decision by filing a written request for review with the corrections complaint

---

[4] The 2002 version of the Wisconsin Administrative Code was in effect in 2014 and the court cites to that version, unless otherwise noted.

examiner. Wis. Admin. Code §DOC 310.13(1). The corrections complaint examiner reviews the appeal and makes a recommendation to the secretary of the DOC. Wis. Admin. Code §DOC 310.13(6). The secretary may accept, adopt or reject the recommendation, or return the appeal for further investigation. Wis. Admin. Code §DOC 310.14(2).

The ICE rejects some complaints at the institution level. Wis. Admin. Code. §DOC 310.11(5). In that case, the appropriate reviewing authority reviews only the basis for rejecting the complaint; he or she does not examine the merits of the complaint. Wis. Admin. Code §DOC 310.11(6). The reviewing authority's decision is final. Id.

"An inmate may not use the ICRS to raise . . . any issue related to a conduct report, unless the inmate has exhausted the disciplinary process in accordance with ch. DOC 303." Wis. Admin Code §DOC 310.08(2)(a). After the disciplinary process has concluded, an incarcerated person may appeal a "disciplinary decision," including procedural errors, to the warden within ten days after receiving a copy of the decision. Wis. Admin. Code §DOC 303.82(1). The warden then must review all records and forms relating to the appeals and make a decision within sixty days. Wis. Admin. Code §DOC 303.82(2). The warden's decision is final as it relates to sufficiency of the evidence. Wis. Admin. Code. §DOC 303.82(4). An incarcerated individual may, however, appeal claims of procedural error under the ICRS (DOC 310.08(3)). Id.

14

D. <u>Complaints Related to Plaintiff's Claim that Ashworth, Eckstein, Wall and Weirenga Intercepted Plaintiff's Correspondence with Peg Swan and Jeff Poff in Retaliation for the Plaintiff's Assistance to Swan with her Advocacy for Waupun Incarcerated Individuals and the Class Action Lawsuit the Plaintiff and Poff were Preparing</u>

The court has allowed the plaintiff to proceed on this claim (dkt. no. 9 at 14-15) which is based on the complaint's allegations at ¶¶13-19. As stated in the previous section, the defendants do not argue that the plaintiff failed to exhaust his administrative remedies regarding his claim that Ashworth, Eckstein, Wall and Weirenga intercepted his correspondence with Peg Swan and Jeff Poff. The court will consider this claim on its merits.

E. <u>Complaints Related to Plaintiff's Allegations that his Property was Missing or Disbursed</u>

The plaintiff contends that he exhausted his claim about the "missing/disbursed property" with ICRS complaints WCI-2014-20207 (disbursed materials), WCI-2014-20206 (missing materials) and WCI-2014-19267 (retaliation). Dkt. No. 37 at 5. For exhaustion purposes, the PLRA requires incarcerated persons to provide a prison with "notice of, and an opportunity to correct, a problem." <u>Price v. Friedrich</u>, 816 F. App'x 8, 10 (7th Cir. 2020) (quoting <u>Schillinger v. Kiley</u>, 954 F.3d 990, 995-96 (7th Cir. 2020)); <u>see also</u> <u>Turley v. Rednour</u>, 729 F.3d 645, 650 (7th Cir. 2013)); <u>Jones v. Bock</u>, 549 U.S. 199, 219 (2007).

In WCI-2014-19267, the plaintiff alleged that his legal materials were returned to other incarcerated individuals or destroyed to stop his lawsuit and as an intimidation tactic. Dkt. No. 27-1 at ¶23. The ICE rejected this complaint as moot because it raised issues that already had been raised through the

15

ICRS in WCI-2014-20207. Id. at ¶24. But WCI-2014-20207 did not raise the issue of retaliation; it alleged that legal property the plaintiff had in his cell was returned to other incarcerated individuals. Dkt. No. 27-1 at ¶47. The plaintiff correctly points out that the retaliation issue he raised in WCI-2014-19267 was not raised in WCI-2014-20207. He raised the issue of retaliation in WCI-2014-19267, and arguably described the protected conduct (his lawsuit) and the retaliatory action (return or destruction of property). The plaintiff has exhausted this issue and the court will deny the defendants' motion for summary judgment as to the plaintiff's claim that his property was destroyed or disbursed.[5]

The plaintiff's ICRS complaints WCI-2014-20206 and WCI-2014-20207 did not exhaust any of his retaliation claims because those complaints did not indicate that the issue he was grieving related to retaliation. See Schillinger, 954 F.3d at 995; Price v. Friedrich, 816 F. App'x at 10 (incarcerated person's retaliation claim not exhausted because grievances did not alert prison officials to prisoner's belief that legal materials were destroyed in retaliation for grievances incarcerated person filed). This does not impact the court's summary judgment analysis, however, because WCI-2014-19267 provided institution staff with notice of the plaintiff's retaliation claims that his legal property was destroyed or disbursed.

---

[5] As noted in the preceding section, this claim, which is from ¶¶25-27 of the plaintiff's complaint, appears to be consistent with his claim that during their investigation into his conduct report the defendants seized and confiscated his legal property.

16

F. <u>ICRS Complaints Related to Claims that Ashworth, Eckstein and Sabish Retaliated Against the Plaintiff Related to Conduct Report 2471890 for his Proposed Class Action and for Providing Assistance to Peg Swan</u>

This claim involves ICRS complaints WCI-2014-21208, WCI-2014-21501, WCI-2015-15129 and GBCI-2019-8021. In WCI-2014-21208, the plaintiff alleged that Ashworth and Eckstein issued him CR 2471890 in retaliation for communicating with a prison advocate/media. Dkt. No. 27-1 at ¶54. The ICE rejected the complaint as outside the scope of the ICRS under §DOC 310.08(2) because the issue related to a conduct report, and it had not been resolved through the grievance process. Dkt. No. 38 at ¶29. The ICE also reminded the plaintiff that "the ICRS may be used to challenge only the disciplinary process, following DOC 310.08(3)." Id.

According to the plaintiff, the issue he raised was not related to conduct report CR 2471890 because it did not challenge the report's factual basis and could not have been raised on appeal. Dkt. No. 37 at 10. He says the ICE improperly rejected WCI-2014-21208 and that he filed a timely appeal of the rejection. Id. The plaintiff also states that the decision in complaint WCI-2014-21208 constituted a directive that retaliation claims related to CR 2471890 were outside the scope of the ICRS. Id. at 11. He says that he was instructed that the only complaints related to CR 2471890 that would be accepted were those that raised procedural claims, consistent with Wis. Admin. Code §DOC 310.08(2). Id.

"An inmate may not use the ICRS to raise . . . any issue related to a conduct report, unless the inmate has exhausted the disciplinary process in

17

accordance with ch. DOC 303." Wis. Admin. Code §DOC 310.08(2)(a). In determining whether an ICRS complaint raises issues "related to" a conduct report, the relevant question is whether the subject of the complaint "would have been germane to the question of [the incarcerated individual's] guilt or innocence" of the conduct report. Rivera v. Lindmeier, No. 13-C-124, 2013 WL 6806188, at *2 (E.D. Wis. Dec. 20, 2013). "On the whole, what the regulations mean is that inmates should not use the ICRS grievance process to contest the merits of their disciplinary actions." Id. at *3.

The plaintiff's ICRS complaint WCI-2014-21208 did not challenge the factual basis for CR 2472890 and therefore was not "related to" the conduct report. The plaintiff's contention that the ICE incorrectly rejected WCI-2014-21208 as outside the scope of the ICRS appears to be correct. Even if the issue raised in WCI-2014-21208 was "related to" CR 2472890, such that the plaintiff was required to exhaust the disciplinary process under ch. DOC 303 before filing an ICRS complaint, the regulations permit incarcerated individuals to use the ICRS only to challenge the procedure used in the disciplinary process. Wis. Admin. Code §DOC 310.08(3). The plaintiff did not challenge the procedure used in the disciplinary hearing on CR 2472890, which means that the ICRS was not an available administrative remedy after the plaintiff had exhausted the disciplinary process.[6]

---

[6] The court's screening order did not explicitly allow the plaintiff to proceed on a claim that CR 2471890 was retaliatory. The claim is consistent, however, with the plaintiff's allegations that the defendants' actions regarding the investigation leading up to the conduct report and the disciplinary hearing were retaliatory. The defendants' reply brief is largely silent on the plaintiff's

18

In WCI-2014-21501, the plaintiff alleged that he filed an ICRS complaint regarding the appeal of CR 2471890; the crux of his appeal was that the failure to provide supporting evidence was fatal to the enterprising charges because it left only the vague allegations in the conduct report. Dkt. No. 38 at ¶¶36-37. In WCI-2015-15129, the plaintiff alleged that the hearing officer added evidence to the record post-hearing. Dkt. No. 38 at ¶44. He did not raise the issue of retaliation in this complaint.[7] In WCI-2019-8021, the plaintiff alleged that the defendants withheld exculpatory evidence from his due process hearing, his open record request and his *certiorari* appeal. Dkt. No. 38 at ¶49. He says that after Sabish issued the revised DOC-84 on July 27, 2015, the plaintiff had ten days to appeal the decision to the warden under §303.76(7) and that he filed his appeal on July 31, 2015. Dkt. No. 37 at 13. The plaintiff did not raise the issue of retaliation in this complaint.

The plaintiff contends that he didn't raise the issue of retaliation in the ICRS complaints he filed about procedural issues regarding CR 2471890 because the ICE's response to WCI-2014-21203 directed him not to do so. The defendants do not address the plaintiff's argument in their summary judgment reply and the DOC regulations described above support the plaintiff's

---

retaliation claims related to the conduct report, investigation and disciplinary hearing, and the defendants do not contend that the plaintiff is not proceeding on such a claim. The court will allow the plaintiff to proceed on his claim that Ashworth and Eckstein issued the plaintiff CR 2471890 in retaliation for communicating with a prison advocate.

[7] The ICE rejected the complaint as untimely, but the plaintiff points out that he timely filed his complaint on August 13, 2015, after the warden denied the plaintiff's appeal of the revised DOC-84 on August 6, 2015. Dkt. No. 37 at 14.

assertion. The Wisconsin Administrative Code does not appear to provide an administrative remedy for the motivation of staff members' actions related to conduct reports. See Ravenwood-Alexander v. Beahm, No. 17-CV-7-PP, 2018 WL 4188472, at *7–8 (E.D. Wis. Aug. 31, 2018). The court will deny the defendants' motion for summary judgment regarding the plaintiff's claims that the defendants retaliated against him related to his conduct report and disciplinary hearing proceedings.

### III. Conclusion

The court **DENIES** the defendants' motion for summary judgment on exhaustion grounds. Dkt. No. 26.

The court **ORDERS** that the deadline for the completion of discovery is **October 20, 2023** and the deadline for the parties to file motions for summary judgment on the merits is **November 17, 2023**.

Dated in Milwaukee, Wisconsin this 19th day of July, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**